UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Leonard Jones,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**HKB Hotel Group, LLC**<br><br>Defendant. | No.<br><br>Judge<br>Magistrate Judge<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT** |

Plaintiff, Leonard Jones ("Plaintiff"), individually and on behalf of all other persons similarly situated, sues the Defendant, HKB Hotel Group, LLC (hereafter referred to as "HKB Hotel Group" or "Defendant") and alleges as follows:

**PRELIMINARY STATEMENT**

1. This lawsuit arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.;* Ohio Minimum Fair Wage Standards Act ("OMWFSA"), O.R.C. § 4111.01, *et seq*.; Ohio Prompt Pay Act, O.R.C. § 4113.15, O.R.C. § 2307.60 and Fed. R. Civ. P. 23 for HKB Hotel Group's failure to pay Plaintiff and other similarly-situated employees all earned overtime wages.

2. Plaintiff, the Collective Members and the Class Members are current and former employees of HKB Hotel Group, LLC in Ohio. Plaintiff brings this action on behalf of himself and similarly-situated current and former non-exempt hourly employees who worked for HKB Hotel Group in Ohio.

3. Under the FLSA and OMWFSA, employers must pay all non-exempt employees an overtime wage premium of pay one and one-half times their regular rates of pay for all time they spend working in excess of 40 hours in a given workweek. HKB Hotel Group failed to pay Plaintiff, the Collective Members and the Class Members one and one-half times their regular rate

of pay for all time they spent working in excess of 40 hours in a given workweek. Plaintiff therefore brings this Class Action and Collective action Complaint pursuant to Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b) for HKB Hotel Group's violations of federal and Ohio law as detailed further below.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq.* because this civil action arises under the laws of the United States.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of Plaintiff and the Collective Members occurred within this District.

6. At all relevant times, Plaintiff has been a resident of Ohio and performed work for HKB Hotel Group in this judicial district.

7. HKB Hotel Group regularly conducts business in and has engaged in the wrongful conduct alleged herein – and, thus, is subject to personal jurisdiction in – this judicial district.

8. Plaintiff, the Collective Members and the Class Members in their work for HKB Hotel Group were employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

## PARTIES

9. At all times material to the matters alleged in this Complaint, Plaintiff was an employee of HKB Hotel Group.

10. Plaintiff was employed by HKB Hotel Group as a shuttle driver from approximately October 1, 2017 through approximately October 1, 2025.

11. The Collective Members are all current and former non-exempt hourly employees who worked for HKB Hotel Group in Ohio at any point in the three years preceding the filing of the original Complaint.

12. The Class Members are all current and non-exempt hourly employees who worked for HKB Hotel Group in the state of Ohio at any point in the three years preceding the filing of the Complaint.

13. The Class and Collective Members are non-exempt from the OMFWSA and FLSA overtime requirements.

14. At all material times, HKB Hotel Group was licensed to transact business in the State of Ohio.

15. Under the OMFWSA and FLSA, HKB Hotel Group is an employer. At all relevant times, HKB Hotel Group had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's employment with HKB Hotel Group. As a person who acted in the interest of HKB Hotel Group in relation to the company's employees, HKB Hotel Group is subject to liability under the OMFWSA and FLSA.

16. At all material times, Plaintiff and the Class and Collective Members were employees of HKB Hotel Group as defined by the OMFWSA and FLSA, 29 U.S.C. § 203(e)(1).

17. At all material times, Plaintiff and the Class and Collective Members were non-exempt employees under 29 U.S.C. § 213(a)(1).

18. Plaintiff has given his written consent to be named party Plaintiff in this action pursuant to 29 U.S.C. § 216(b), a true and accurate copy of which is attached as "**Exhibit A**" and is attached again hereto.

## FACTUAL ALLEGATIONS

19. HKB Hotel Group owns and operates approximately 36 hotel properties across the United States. *See* https://hkbhotelgroup.com/portfolio/ (last visited Oct. 28, 2025).

20. Plaintiff was employed by HKB Hotel Group as a shuttle driver at its Crowne Plaza Hotel located at 7230 Engle Road, Middleburg Heights, Ohio 44130 from on or about October 1, 2017 through on or about October 1, 2025.

21. The Collective Members are all current and former non-exempt employees who worked for HKB Hotel Group at any point in the three years preceding the filing of this Complaint. The Collective Members are non-exempt from the FLSA's overtime requirements.

22. The Class Members are all current and former non-exempt employees who worked for HKB Hotel Group in Ohio at any point in the three years preceding the filing of this Complaint. The Class Members are non-exempt from the OMFWSA's overtime requirements.

23. At all relevant times, Plaintiff was compensated on an hourly basis.

24. In his work for HKB Hotel Group, Plaintiff routinely worked in excess of forty hours in a given workweek.

25. During each and every workweek, Plaintiff, the Class and Collective Members were paid on an hourly basis.

26. At all relevant times, Plaintiff, the Collective Members and the Class Members were subject to HKB Hotel Group's Meal Break Policy.

27. Pursuant to HKB Hotel Group's Meal Break Policy, HKB Hotel Group automatically deducts a thirty-minute meal break for each and every shift worked by Plaintiff, the Collective Members and the Class Members.

28. HKB Hotel Group made this automatic 30-minute deduction from Plaintiff's, the Collective Members' and the Class Members' pay regardless of whether they were actually permitted to take a meal break, regardless of whether they were permitted to take a full thirty-minute meal break, and regardless of whether they were completely relieved from duty for thirty-minutes.

29. The job demands of Plaintiff, the Collective Members and the Class Members routinely foreclosed their ability to take any meal break, prohibited them from taking a full thirty-minute meal break, or prohibited them being completely relieved from duty for thirty-minutes.

30. Nevertheless, HKB Hotel Group automatically deducted thirty minutes from every shift worked by Plaintiff, the Collective Members and the Class Members, thereby denying them lawful minimum and overtime wages.

31. Additionally, HKB Hotel Group has engaged in a consistent, widespread and illegal practice of time clock manipulation or "time shaving."

32. Plaintiff, the Collective Member and the Class Members frequently work in excess of 40 hours in a given workweek; however, in such instances, HKB Hotel Group routinely edits the time records of Plaintiff, the Collective Members and the Class Members so that they are paid for no more than forty straight-time hours.

33. For example, during the pay period beginning on July 13, 2025, and ending on July 16, 2025, Plaintiff worked no less than approximately 45-hours each week. However, HKB Hotel Group manipulated Plaintiff's time records so that Plaintiff was paid for only 80-hours during that pay period and was therefore not paid any overtime.

34. Moreover, HKB Hotel Group has a company wide practice of making unlawful deductions from Plaintiff's, the Collective Members' and the Class Members pay for breakage and to other work related expenses.

35. For example, in or around July 2025, HBK Hotel Group charged Plaintiff approximately $300.00 which HBK Hotel Group claimed was due to a broken key for one of HBK Hotel Group's shuttle vans.

36. However, Plaintiff was not responsible for breaking the key and denied doing the same.

37. In any event, charging Plaintiff for the broken key was unlawful and resulted in and illegal "kick-back" of overtime wages that were otherwise owed to Plaintiff.

38. Additionally, HKB Hotel Group has a company wide practice of failing to pay Plaintiff, the Collective Members' and the Class Members' all owed wages on Plaintiff, the Collective Members' and the Class Members' regularly scheduled pay dates.

39. For example, HKB Hotel Group paid Plaintiff, the Collective Members and the Class Members for only one-week of work during the pay period beginning on December 15, 2024 and ending on December 28, 2025.

40. In this instance, HKB Hotel Group again shaved the time of Plaintiff, the Collective Members and the Class Members worked so that they were paid for no more than forty hours and were not paid any overtime despite working more than forty (40) hours in a given week.

41. There are many other instances where Plaintiff, the Collective Members, and the Class members were not paid for all hours worked on time.

42. Plaintiff, the Collective Member and the Class Members would ask HKB Hotel Group to rectify their payroll shortfalls in these instances.

43. In some instances, HKB Hotel Group would make payments toward the unpaid wages owed to Plaintiff, the Collective Members and the Class Members weeks or even months after the wages were due.

44. In other instances, HKB Hotel Group failed to pay Plaintiff, the Collective Members and Class Members these unpaid wages altogether.

45. At all relevant times, HKB Hotel Group failed to keep accurate time and pay records for Plaintiff, the Collective Members and the Class Members as required by federal and Ohio law.

46. Substantial discrepancies exist between the amount of time that Plaintiff, the Collective Members and the Class Members actually worked and the amount of time that Plaintiff, the Collective Members and the Class Members were paid by HKB Hotel Group.

47. As a result of HKB Hotel Group's company-wide policies, Plaintiff and Class and Collective Members were not paid for all time worked each day and are owed significant unpaid wages.

48. HKB Hotel Group's method of paying Plaintiff and Class and Collective Members in violation of federal and Ohio law was willful and was not based on a good faith and reasonable belief that their conduct complied with the law. HKB Hotel Group knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

49. In August 2025, Plaintiff made multiple complaints to HKB Hotel Group regarding the illegal wage practices detailed herein.

50. By approximately October 1, 2025, HKB Hotel Group made the decision to terminate Plaintiff's employment.

51. HKB Hotel Group's termination of Plaintiff was retaliatory and was in further

violation of the federal and state law.

## COLLECTIVE ACTION ALLEGATIONS

52. Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

53. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) on his own behalf and as a representative of individuals similarly situated who are current or former non-exempt hourly employees employed in Ohio by HKB Hotel Group.

54. HKB Hotel Group subjected all of their non-exempt hourly employees, including Plaintiff and the Collective Members, to their policy and practice of failing to pay for all hours worked and improperly calculating overtime rates in violation of 29 U.S.C. §§ 206 and 207.

55. Plaintiff's claims stated in this Complaint are essentially the same as those of the Collective Members. This action is properly maintained as a collective action because in all pertinent aspects the employment relationship of individuals similarly situated to Plaintiff is identical or substantially similar.

56. The Collective Members perform or have performed the same or similar work as Plaintiff.

57. HKB Hotel Group's failure to pay overtime compensation required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of Plaintiff or the Collective Members.

58. Although the exact amount of damages may vary among the Collective Members, the damages for the Collective Members can be easily calculated by a simple formula. The claims of all Collective Members arise from a common nucleus of facts. Liability is based on a systematic

course of wrongful conduct by HKB Hotel Group that caused harm to all of the Collective Members.

59. As such, Plaintiff brings these FLSA claims as a collective action on behalf of the following class:

> **All of HKB Hotel Group's current and former non-exempt hourly employees who worked in Ohio at any time from three years preceding the filing of the Complaint to the present.**

60. HKB Hotel Group's unlawful conduct, as described herein, is pursuant to their corporate policy or practice of minimizing labor costs by refusing and/or failing to properly compensate its employees according to the FLSA.

61. HKB Hotel Group is aware or should have been aware that federal law prohibited them from not paying Plaintiff and the Collective Members all minimum wage and overtime as detailed herein.

62. HKB Hotel Group's unlawful conduct has been widespread, repeated, and consistent.

63. This action is properly brought and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).

64. Upon information and belief, the individuals similarly situated to Plaintiff includes hundreds of non-exempt hourly employees currently and/or formerly employed by HKB Hotel Group. Plaintiff is unable to state the precise number of similarly-situated employees because that information is solely in HKB Hotel Group's possession, custody, or control, but it can be readily ascertained from their employment records.

65. Notice can be provided to the Collective Members by First Class Mail to the last address known to HKB Hotel Group, via email at the last known email address known to HKB

Hotel Group, and by text message to the last known telephone number known to HKB Hotel Group.

## OHIO RULE 23 CLASS DEFINITIONS AND ALLEGATIONS

66. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

67. Plaintiff brings Claims for Relief for violation of Ohio wage and hour laws as a class action pursuant to Rule 23(a), (b)(2), and (b)(3). Plaintiff brings these claims on behalf of himself and all members of the following class comprised of:

**Rule 23 Class**

**The Class Members are all of HKB Hotel Group's current and former non-exempt hourly employees who worked in Ohio at any time from three years preceding the filing of the Complaint to the present.**

**Numerosity (Rule 23(a)(1)).**

68. The Class Members are so numerous that joinder of all members is impracticable. Plaintiff on information and belief alleges, that HKB Hotel Group employed greater than one hundred people who satisfy the definition of the Class Members.

**a. Existence of Common Questions of Law and Fact (Rule 23(a)(2)).**

69. Common questions of law and fact exist as to the Plaintiff and the Class Members including, but not limited to, the following:

a. Whether HKB Hotel Group unlawfully failed to pay the Class Members all overtime wages in violation of the Ohio Minimum Fair Wage Standards Act ("OMFWSA");

b. Whether HKB Hotel Group unlawfully failed to keep and maintain accurate and true records of the hours worked by the Class Members as required by applicable law; and

c. The damages sustained and the proper measure of restitution recoverable by members of the Class Members.

**b. Typicality (Rule 23(a)(3)).**

70. Plaintiff's claims are typical of the Class Members' claims. Plaintiff, like the Class Members, was subjected to HKB Hotel Group's illegal scheme to maximize profits by depriving their employees of minimum wage and overtime compensation.

**c. Adequacy (Rule 23(a)(4)).**

71. Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff has retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation.

**d. Injunctive and Declaratory Relief (Rule 23(b)(2)).**

72. Class certification of the Rule 23 claims is appropriate pursuant to Rule 23(b)(2) because HKB Hotel Group acted or refused to act on grounds generally applicable to the Class Members, making appropriate declaratory relief with respect to the Class Members as a whole.

**e. Predominance and Superiority of Class Action (Rule 23(b)(3)).**

73. Class certification of the Rule 23 claims is also appropriate under Rule 23(b)(3) because questions of law and fact common to the Class Members predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. HKB Hotel Group's common and uniform policies and practices illegally deprived Plaintiff and all similarly situated employees of wages; thus, making the question of liability and damages much more manageable and efficient to resolve in a class action, compared to hundreds of individual trials. The damages suffered by individual Class Members are small compared to the expense and burden of individual

prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about HKB Hotel Group's practices.

74. Plaintiff intends to send notice to all Class Members to the extent required by Rule 23.

**COUNT ONE: FAIR LABOR STANDARDS ACT**
**FAILURE TO PAY FOR ALL HOURS WORKED**
**AND IMPROPER OVERTIME RATE**
**(on behalf of Plaintiff and the Collective Members)**

75. Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

76. In their work for HKB Hotel Group, Plaintiff and the Collective Members routinely worked in excess of forty hours in a given workweek.

77. During each and every workweek, Plaintiff and Collective Members were paid on an hourly basis.

78. Under the FLSA, employers must pay all non-exempt employees an overtime wage premium of pay one and one-half times their regular rate of pay for all time they spend working in excess of 40 hours in a given workweek.

79. The FLSA requires and employer to keep records that include certain identifying information about the employee and data about the hours worked and the wages earned. The law requires this information to be accurate. The following is a listing of the basic records that an employer must maintain: (1) employee's full name and social security number; (2) address, including zip code; (3) birth date, if younger than 19; (4) sex and occupation; (5) time and day of week when employee's workweek begins; (6) hours worked each day; (7) total hours worked each workweek; (8) basis on which employee's wages are paid (e.g., "$9 per hour", "$440 a week",

"piecework"); (9) regular hourly pay rate; (10) total daily or weekly straight-time earnings; (11) total overtime earnings for the workweek; (12) all additions to or deductions from the employee's wages; (13) total wages paid each pay period; and (14) date of payment and the pay period covered by the payment. FLSA Factsheet #21.

80. "While the FLSA does not expressly set forth a requirement of prompt payment, such a requirement is clearly established by the authorities . . . ." *See e.g., United States v. Klinghoffer Bros. Realty Corp.,* 285 F.2d 487, 491 (2d Cir. 1960).

81. The Supreme Court explained that the Act's liquidated damages provision: constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living 'necessary for health, efficiency and general well-being of workers' and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707, 89 L. Ed. 1296, 65 S. Ct. 895 (1945) (footnote omitted).

82. For purposes of computing pay due under the Fair Labor Standards Act, a single workweek may be established for a plant or other establishment as a whole or different workweeks may be established for different employees or groups of employees. Once the beginning time of an employee's workweek is established, it remains fixed regardless of the schedule of hours worked by him. The beginning of the workweek may be changed if the change is intended to be permanent and is not designed to evade the overtime requirements of the Act. *See* 29 C.F.R. 778.105.

83. The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. Payment may

not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made. *See* 29 C.F.R. § 778.106.

84. Under the FLSA, wages "cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.' The wage requirements of the Act will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. 29 C.F.R. § 531.35

85. "Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry." 29 C.F.R. § 785.18. "They promote the efficiency of the employee and are customarily paid for as working time." *Id.* "They must be counted as hours worked." *Id.*

86. "Bona fide meal periods are not worktime." 29 C.F.R. § 785.19. "Bona fide meal periods do not include coffee breaks or time for snacks." *Id.* "These are rest periods." *Id.* "The employee must be completely relieved from duty for the purposes of eating regular meals."

87. Ordinarily, a break must be at least 30-minutes in length to be considered a "bona fide meal period." *See id.*

88. Moreover, a meal break must be paid if the employee is required to perform any duties, whether active or inactive, while eating. *See id*.

89. At all relevant times, Plaintiff and the Collective Members were subject to HKB Hotel Group's Meal Break Policy.

90. Pursuant to HKB Hotel Group's Meal Break Policy, HKB Hotel Group automatically deducts a thirty-minute meal break for each and every shift worked by Plaintiff and the Collective Members.

91. HKB Hotel Group made this automatic 30-minute deduction from Plaintiff's and the Collective Members' pay regardless of whether they were actually permitted to take a meal break, regardless of whether they were permitted to take a full thirty-minute meal break, and regardless of whether they were completely relieved from duty for thirty-minutes.

92. The job demands of Plaintiff and the Collective Members routinely foreclosed their ability to take any meal break, prohibited them from taking a full thirty-minute meal break, or prohibited them being completely relieved from duty for thirty-minutes.

93. Nevertheless, HKB Hotel Group automatically deducted thirty minutes from every shift worked by Plaintiff and the Collective Members, thereby denying them lawful minimum and overtime wages.

94. Additionally, HKB Hotel Group has engaged in a consistent, widespread and illegal practice of time clock manipulation or "time shaving."

95. Plaintiff and the Collective Members frequently work in excess of 40 hours in a given workweek; however, in such instances, HKB Hotel Group routinely edits the time records of Plaintiff and the Collective Members so that they are paid for no more than forty straight-time hours.

96. For example, during the pay period beginning on July 13, 2025, and ending on July 16, 2025, Plaintiff worked no less than approximately 45-hours each week. However, HKB Hotel Group manipulated Plaintiff's time records so that Plaintiff was paid for only 80-hours during that pay period and was therefore not paid any overtime.

97. Moreover, HKB Hotel Group has a company-wide practice of making unlawful deductions from Plaintiff's and the Collective Members' pay for breakage and to other work related expenses.

98. For example, in or around July 2025, HBK Hotel Group charged Plaintiff approximately $300.00 which HBK Hotel Group claimed was due to a broken key for one of HBK Hotel Group's shuttle vans.

99. However, Plaintiff was not responsible for breaking the key and denied doing the same.

100. In any event, charging Plaintiff for the broken key was unlawful and resulted in and illegal "kick-back" of overtime wages that were otherwise owed to Plaintiff.

101. Additionally, HKB Hotel Group has a company-wide practice of failing to pay Plaintiff and the Collective Members all owed wages on Plaintiff, the Collective Members' and the Class Members' regularly scheduled pay dates.

102. For example, HKB Hotel Group paid Plaintiff and the Collective Members for only one-week of work during the pay period beginning on December 15, 2024 and ending on December 28, 2025.

103. In this instance, HKB Hotel Group again shaved the time of Plaintiff and the Collective Members so that they were paid for no more than forty hours and were not paid any overtime despite working more than forty (40) hours in a given week.

104. There are many other instances where Plaintiff and the Collective Members were not paid for all hours worked on time.

105. Plaintiff and the Collective Member would ask HKB Hotel Group to rectify their payroll shortfalls in these instances.

106. In some instances, HKB Hotel Group would make payments toward the unpaid wages owed to Plaintiff and the Collective Members weeks or even months after the wages were due.

107. In other instances, HKB Hotel Group failed to pay Plaintiff and the Collective Members these unpaid wages altogether.

108. At all relevant times, HKB Hotel Group failed to keep accurate time and pay records for Plaintiff and the Collective Members as required by federal law.

109. Substantial discrepancies exist between the amount of time that Plaintiff and the Collective Members actually worked and the amount of time that Plaintiff and the Collective Members were paid by HKB Hotel Group.

110. As a result of HKB Hotel Group's company-wide policies, Plaintiff and the Collective Members were not paid for all time worked each day and are owed significant unpaid wages.

111. HKB Hotel Group's method of paying Plaintiff and the Collective Members in violation of federal law was willful and was not based on a good faith and reasonable belief that their conduct complied with the law. HKB Hotel Group knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

112. As a result of HKB Hotel Group's failure or refusal to pay Plaintiff and the Collective Members for all hours worked, HKB Hotel Group violated 29 U.S.C. §§ 206 and 207(a). Plaintiff and the Collective Members are therefore entitled to compensation of one and one-half times their regular rate of pay, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

## COUNT TWO: OHIO MINIMUM FAIR WAGE STANDARDS ACT FAILURE TO PAY FOR ALL HOURS WORKED AND IMPROPER OVERTIME RATE

**(on behalf of Plaintiff and the Class Members who elect to opt-in)**

113. Plaintiff and the Class Members reallege and incorporate by reference all allegations in all preceding paragraphs.

114. "FLSA and Ohio Minimum Fair Wage Standards Act claims are subject to [the] same standards." *Craig v. Landry's, Inc.*, No. 1:16-CV-277, 2016 WL 3406032, at *3 (S.D. Ohio June 21, 2016) (citing *Haight*; *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp.2d 725, 732 (S.D. Ohio 2006); *Pritchard v. Dent Wizard Int'l. Corp.*, 210 F.R.D. 591, 596 (S.D. Ohio 2002)).

115. In their work for HKB Hotel Group, Plaintiff and the Class Members routinely worked in excess of forty hours in a given workweek.

116. During each and every workweek, Plaintiff and the Class Members were paid on an hourly basis.

117. Under Ohio law, employers must pay all non-exempt employees an overtime wage premium of pay one and one-half times their regular rate of pay for all time they spend working in excess of 40 hours in a given workweek.

118. Ohio law requires and employer to keep records that include certain identifying information about the employee and data about the hours worked and the wages earned. The law requires this information to be accurate. The following is a listing of the basic records that an employer must maintain: (1) employee's full name and social security number; (2) address, including zip code; (3) birth date, if younger than 19; (4) sex and occupation; (5) time and day of week when employee's workweek begins; (6) hours worked each day; (7) total hours worked each workweek; (8) basis on which employee's wages are paid (e.g., "$9 per hour", "$440 a week", "piecework"); (9) regular hourly pay rate; (10) total daily or weekly straight-time earnings; (11) total overtime earnings for the workweek; (12) all additions to or deductions from the employee's wages; (13) total wages paid each pay period; and (14) date of payment and the pay period covered by the payment.

119. "While the [Ohio law] does not expressly set forth a requirement of prompt payment, such a requirement is clearly established by the authorities . . . ." *See e.g., United States v. Klinghoffer Bros. Realty Corp.,* 285 F.2d 487, 491 (2d Cir. 1960).

120. The Supreme Court explained that the Act's liquidated damages provision: constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living 'necessary for health, efficiency and general well-being of workers' and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707, 89 L. Ed. 1296, 65 S. Ct. 895 (1945) (footnote omitted).

121. For purposes of computing pay due under Ohio law, a single workweek may be established for a plant or other establishment as a whole or different workweeks may be established for different employees or groups of employees. Once the beginning time of an employee's workweek is established, it remains fixed regardless of the schedule of hours worked by him. The beginning of the workweek may be changed if the change is intended to be permanent and is not designed to evade the overtime requirements of the Act. *See* 29 C.F.R. 778.105.

122. The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made. *See* 29 C.F.R. § 778.106.

123. Under Ohio law, wages "cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.'

The wage requirements of the Act will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. 29 C.F.R. § 531.35

124. "Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry." 29 C.F.R. § 785.18. "They promote the efficiency of the employee and are customarily paid for as working time." *Id.* "They must be counted as hours worked." *Id.*

125. "Bona fide meal periods are not worktime." 29 C.F.R. § 785.19. "Bona fide meal periods do not include coffee breaks or time for snacks." *Id.* "These are rest periods." *Id.* "The employee must be completely relieved from duty for the purposes of eating regular meals."

126. Ordinarily, a break must be at least 30-minutes in length to be considered a "bona fide meal period." *See id.*

127. Moreover, a meal break must be paid if the employee is required to perform any duties, whether active or inactive, while eating. *See id*.

128. At all relevant times, Plaintiff and the Collective Members were subject to HKB Hotel Group's Meal Break Policy.

129. Pursuant to HKB Hotel Group's Meal Break Policy, HKB Hotel Group automatically deducts a thirty-minute meal break for each and every shift worked by Plaintiff and the Class Members.

130. HKB Hotel Group made this automatic 30-minute deduction from Plaintiff's and the Class Members' pay regardless of whether they were actually permitted to take a meal break, regardless of whether they were permitted to take a full thirty-minute meal break, and regardless of whether they were completely relieved from duty for thirty-minutes.

131. The job demands of Plaintiff and the Class Members routinely foreclosed their ability to take any meal break, prohibited them from taking a full thirty-minute meal break, or prohibited them being completely relieved from duty for thirty-minutes.

132. Nevertheless, HKB Hotel Group automatically deducted thirty minutes from every shift worked by Plaintiff and the Class Members, thereby denying them lawful minimum and overtime wages.

133. Additionally, HKB Hotel Group has engaged in a consistent, widespread and illegal practice of time clock manipulation or "time shaving."

134. Plaintiff and the Class Members frequently work in excess of 40 hours in a given workweek; however, in such instances, HKB Hotel Group routinely edits the time records of Plaintiff and the Class Members so that they are paid for no more than forty straight-time hours.

135. For example, during the pay period beginning on July 13, 2025, and ending on July 16, 2025, Plaintiff worked no less than approximately 45-hours each week. However, HKB Hotel Group manipulated Plaintiff's time records so that Plaintiff was paid for only 80-hours during that pay period and was therefore not paid any overtime.

136. Moreover, HKB Hotel Group has a company-wide practice of making unlawful deductions from Plaintiff's and the Collective Members' pay for breakage and to other work related expenses.

137. For example, in or around July 2025, HBK Hotel Group charged Plaintiff approximately $300.00 which HBK Hotel Group claimed was due to a broken key for one of HBK Hotel Group's shuttle vans.

138. However, Plaintiff was not responsible for breaking the key and denied doing the same.

139. In any event, charging Plaintiff for the broken key was unlawful and resulted in and illegal "kick-back" of overtime wages that were otherwise owed to Plaintiff.

140. Additionally, HKB Hotel Group has a company-wide practice of failing to pay Plaintiff and the Class Members all owed wages on Plaintiff and the Class Members' regularly scheduled pay dates.

141. For example, HKB Hotel Group paid Plaintiff and the Class Members for only one-week of work during the pay period beginning on December 15, 2024 and ending on December 28, 2025.

142. In this instance, HKB Hotel Group again shaved the time of Plaintiff and the Class Members so that they were paid for no more than forty hours and were not paid any overtime despite working more than forty (40) hours in a given week.

143. There are many other instances where Plaintiff and the Class Members were not paid for all hours worked on time.

144. Plaintiff and the Class Members would ask HKB Hotel Group to rectify their payroll shortfalls in these instances.

145. In some instances, HKB Hotel Group would make payments toward the unpaid wages owed to Plaintiff and the Class Members weeks or even months after the wages were due.

146. In other instances, HKB Hotel Group failed to pay Plaintiff and the Class Members these unpaid wages altogether.

147. At all relevant times, HKB Hotel Group failed to keep accurate time and pay records for Plaintiff and the Class Members as required by federal law.

148. Substantial discrepancies exist between the amount of time that Plaintiff and the Class Members actually worked and the amount of time that Plaintiff and the Class Members were paid by HKB Hotel Group.

149. As a result of HKB Hotel Group's company-wide policies, Plaintiff and the Class Members were not paid for all time worked each day and are owed significant unpaid wages.

150. HKB Hotel Group's method of paying Plaintiff and the Class Members in violation of Ohio law was willful and was not based on a good faith and reasonable belief that their conduct complied with the law. HKB Hotel Group knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

151. As a result of HKB Group's failure or refusal to pay Plaintiff and the Class Members for all hours worked, and HKB Group's failure or refusal to pay Plaintiff and the Class Members one-and-one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in any given workweek, Plaintiff and the Class Members are entitled to compensation of one and one-half times their regular rate of pay, to be proven at trial, plus treble damages, together with interest, reasonable attorney's fees, and costs.

**COUNT THREE: OHIO PROMPT PAY ACT**
**(on behalf of Plaintiff and the Class Members who decline to opt-out)**

152. Plaintiff and the Class Members reallege and incorporate by reference all allegations in all preceding paragraphs.

153. During all relevant times, HKB Hotel Group was covered by O.R.C. § 4113.15, and Plaintiff and the Class Members were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

154. O.R.C. § 4113.15(A) requires that HKB Hotel Group pay Plaintiff and the Class Members all wages on or before the first day of each month, for wages earned during the first half

of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

155. Section 4111.10(C) specifically states that it applies to employees seeking to "join as a party plaintiff in any civil action that is brought under this section." "Because § 4111.10(C) states it applies only to 'this section,' i.e., civil actions brought under the OMFWSA, it does not apply to Ohio's Prompt Pay Act." *Oglesby v. FedEx Ground Package Systems, Inc.*, Case No. 3:20-cv-00346 at Doc. #78, pp. 11-12 (S.D. Ohio, March 23, 2023).

156. By failing to pay Plaintiff and the Class Members all wages due to them under the FLSA, HKB Hotel Group has also violated the Ohio Prompt Pay Act.

157. Plaintiff and the Class Members' unpaid wages have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

158. In violating Ohio law, HKB Hotel Group acted willfully, without a good faith basis and with reckless disregard to Ohio law.

159. As a result of HKB Hotel Group's willful violation, Plaintiff and Class Members are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

**COUNT FOUR: O.R.C. § 2307.60**
**(On Behalf of Plaintiff and the Class Members who decline to opt-out)**

160. Plaintiff restates and incorporate the foregoing allegations as if fully rewritten herein.

161. The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

162. By their acts and omissions described herein, HKB Hotel Group has willfully violated the FLSA, and Plaintiff and the Class Members have been injured as a result.

163. O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

164. Section 4111.10(C) specifically states that it applies to employees seeking to "join as a party plaintiff in any civil action that is brought under this section." "Because § 4111.10(C) states it applies only to 'this section,' i.e., civil actions brought under the OMFWSA, it does not apply to [O.R.C. § 2307.60]." *See Oglesby v. FedEx Ground Package Systems, Inc.*, Case No. 3:20-cv-00346 at Doc. #78, pp. 11-12, 16 (S.D. Ohio, March 23, 2023).

165. As a result of HKB Hotel Group's willful violations of the FLSA, Plaintiff and the Class Members are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

**COUNT FIVE: UNLAWFUL RETALIATION IN VIOLATION OF THE FLSA**
**(On behalf of Plaintiff individually)**

166. Plaintiff realleges and incorporates by reference the foregoing allegations as if fully rewritten herein.

167. 29 U.S.C. § 215(a)(3) prohibits the discharge or in any other manner discrimination against any employee for attempting to enforce their rights under the FLSA.

168. In August 2025, Plaintiff made multiple complaints to HKB Hotel Group regarding the illegal wage practices detailed herein.

169. In doing so, Plaintiff engaged in activity that is protected from retaliatory and discriminatory action under the FLSA.

170. By approximately October 1, 2025, HKB Hotel Group made the decision to terminate Plaintiff's employment.

171. Plaintiff's attempts to avail himself to the rights afforded to him by the FLSA was the reason for his termination.

172. Prior to complaining of HKB Hotel Group's illegal practices, Plaintiff was

employed without issue for approximately eight years.

173. Any other reason that may be offered by HKB Hotel Group as the cause of Plaintiff's termination is pretext.

174. HKB Hotel Group's termination of Plaintiff was retaliatory and was in further violation of the federal and state law.

**WHEREFORE**, Plaintiff, Leonard Jones, individually, and on behalf of all other similarly situated persons, requests that this Court grant the following relief in Plaintiff's, the Collective Members' and the Class Members' favor, and against HKB Hotel Group, LLC.:

A. For the Court to declare and find that HKB Hotel Group, LLC committed one or more of the following acts:

i. violated the overtime provisions of the FLSA;

ii. willfully violated the wage and overtime provisions of the FLSA;

iii. unlawfully retaliated against Plaintiff in violation of the FLSA;

iv. violated the minimum wage and overtime provisions of the OMFWSA;

v. willfully violated the minimum wage and overtime provisions of the OMFWSA;

vi. willfully violated the Ohio Prompt Pay Act; and

vii. willfully violated O.R.C. § 2307.60.

B. For the Court to award damages in the amounts of all unpaid overtime wages and back pay due and owing to Plaintiff, the Collective Members and the Class Members;

C. For the Court to award compensatory damages, including liquidated damages pursuant to 29 U.S.C. § 216(b), in amounts to be determined at trial;

D. For the Court to award prejudgment and post-judgment interest on any damages awarded;

E. For the Court to award all treble damages, interest attorney fees and costs owed to Plaintiff and the Class Members;

F. For the Court to award Plaintiff's and the Class and Collective Members' reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. § 216(b) and all other causes of action set forth in this Complaint;

G. For the Court to provide a reasonable incentive award for Plaintiff to compensate him for the time she spent attempting to recover wages for the Class and Collective Members and for the risks he took in doing so; and

H. Such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, the Collective Members and the Class Members hereby demand a jury trial on all causes of action and claims with respect to which they each have a state and/or federal constitutional right to a jury trial.

DATED: October 28, 2025

Respectfully submitted,

By: */s/ James L. Simon*

James L. Simon (OH#0089483)
SIMON LAW CO.
11 ½ N. Franklin Street
Chagrin Falls, Ohio
Telephone: (216) 816-8696
Email: james@simonsayspay.com